Matthew Swanlund (SBN 204542)
  *matthew@aestheticlegal.com*
AESTHETIC LEGAL, A.P.L.C.
8055 W Manchester Ave, Suite 310
Playa del Rey, CA 90293
Telephone: (310) 301-4545

Cody R. LeJeune (SBN 249242)
  *cody@lejeunelawfirm.com*
LEJEUNE LAW, P.C.
2801 Camino Del Rio South, Suite 200A
San Diego, California 92108
Telephone: (985) 713-4964

Attorneys for Plaintiff YZ PRODUCTIONS, INC.,


KENNETH B. WILSON  (SBN 130009)
  *ken@coastsidelegal.com*
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR  (SBN 203510)
  *jmasur@zuberlawler.com*
FRANCESCA MIKI SHIMA GERMINARIO  (SBN 326208)
  *fgerminario@zuberlawler.com*
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (213) 596-5600
Facsimile: (213) 596-5621

Attorneys for Defendant REDBUBBLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| YZ PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDBUBBLE, INC., a Delaware corporation, and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No. 5:20-cv-06615-LHK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br><br>Date:          January 6, 2021<br>Time:          2:00 p.m.<br>Courtroom:  8 |

Pursuant to this Court's December 15, 2020 Clerk's Notice Following Case Reassignment to the Honorable Lucy H. Koh, Dkt. 22, and following the conference of counsel on December 29, 2020, all parties herein, through their respective counsel, respectfully submit the following joint statement in advance of the January 6, 2021 Initial Case Management Conference.

1. **Jurisdiction and Service**

This Court has subject matter jurisdiction and personal jurisdiction. Defendant has waived service. [Dkt. No. 10.]

2. **Facts**

   A. **Plaintiff's Summary of the Facts**

YZ is a professional multimedia production company, YouTube channel operator, and distributor engaged in the production, design, creation, distribution and sale of multimedia content. YZ's numerous YouTube channels contain a library of thousands of original videos and currently has more than Thirteen Million (13,000,000) subscribers. YZ's numerous social media channels (i.e., Instagram, Facebook, TikTok) also has multiple millions of subscribers and followers.

Since at least as early as January 1, 2016, YZ has used REBECCA ZAMOLO and ZAMFAM as trademarks in U.S. Commerce in connection with multimedia content (i.e., YouTube videos), social media channels, consumer products, and clothing (collectively, the "REBECCA ZAMOLO Goods"). The REBECCA ZAMOLO trademark was registered with the U.S. Patent and Trademark Office on June 30, 2020 as Registration No. 6,090,463. YZ is the owner of all right, title and interest in and to the trademark REBECCA ZAMOLO (the "REBECCA ZAMOLO Trademark") for the REBECCA ZAMOLO Goods. The ZAMFAM Trademark was submitted for registration with the U.S. Patent and Trademark Office on December 4, 2019 as Serial No. 88,715,402. YZ is the owner of all right, title and interest in and to the trademark ZAMFAM (the "ZAMFAM Trademark") for the ZAMFAM Goods.

Since at least as early as January 1, 2018, YZ has used the RZ Cupcake Artwork on consumer products and clothing (collectively, the "RZ Cupcake Goods"). The RZ Cupcake Artwork was has been registered with the U.S. Copyright Office since November 21, 2019 as

Registration No. VA0002188615.

YZ is also the owner of U.S. Copyright for the Slays Hair Copyright and Slays Hair Trade Dress Copyright and trade dress for the RZ Cupcake Goods. The RZ Cupcake Artwork was registered on November 21, 2019 as Registration No. VA0002195661.

YZ is also the owner of various trade dress artworks, as detailed in the Complaint.

Defendant owns and operates an ecommerce system through which infringing and counterfeit apparel and other goods displaying the YZ Marks, YZ Artworks and Goods, and/or confusingly marks and substantially similar designs (hereinafter, "Infringing Goods") are marketed, offered for sale, sold, created, and/or shipped to consumers by Defendant, all without permission or authorization from YZ.

YZ repeatedly notified Defendant of its infringement of the YZ Marks, YZ Artworks and YZ Goods and demanded that Defendant stop its unlawful activities. However, Defendant thereafter continued to market, offer for sale, sell, create, and/or distribute Infringing Goods in blatant and willful disregard of YZ's valuable intellectual property rights. As a result, Plaintiff initiated this action.

### B. Defendant's Summary of the Facts

Like the Amazon Marketplace and eBay, Redbubble is a global online marketplace platform. (the "Redbubble Marketplace"). More than two million independent third-party artists (also referred to as "Sellers") use the Redbubble platform to upload and sell their creative designs on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art. Potential purchasers can browse through tens of millions of designs on the Marketplace, and hundreds of millions of products bearing these designs are offered for sale by these Sellers.

The Redbubble Marketplace software connects Sellers automatically to third-party manufacturers who print and pack products before third-party shippers pick up and deliver them. The platform also provides Sellers access to third-party payment processors who collect and process customer payments. This transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software. Put another way, Redbubble does not design or upload the content sold over the Redbubble Marketplace. It did not print or otherwise manufacture the

products that YZ claims are infringing (the "Accused Products"), nor does Redbubble own or control the facilities where those products were made or the equipment or processes for doing so. Redbubble never possessed, controlled or held title to the Accused Products. Redbubble personnel did not pack, ship, perform quality control on or otherwise handle those products.  And Redbubble does not sell or offer to sell the Accused Products; that's done by the third-party Sellers.

As noted in its User Agreement, "[r]especting other people's intellectual property is an essential principle of Redbubble's community." Thus, Redbubble has taken significant steps  to prevent misuse of the Marketplace, and has directed substantial resources toward eliminating third-party infringement.  Sellers using the Redbubble Marketplace must confirm that they own or have all rights to use any uploaded content and that the content "will not infringe the intellectual property rights or any other rights of any person or entity."  Each time they upload listings to the Marketplace, Sellers must affirmatively acknowledge that they "have the right to sell products containing this artwork."  Redbubble enforces these rules through a detailed IP/Publicity Rights Policy, which largely tracks the "notice and takedown" provisions of the DMCA.  So if a content owner like YZ provides notice that a particular listing infringes its intellectual property rights, Redbubble promptly (typically within one business day) removes those listings and notifies the third-party Seller who uploaded them.  Per that policy, Redbubble will also "disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others."

In addition, although it has no legal obligation to do so, for certain content owners, Redbubble provides further assistance by proactively policing the Redbubble Marketplace for potentially infringing content, using screening criteria based on information from content owners (and almost always created in collaboration with them). Redbubble currently conducts proactive policing for marks belonging to nearly hundreds of content owners, including some of the largest content owners in the world, and polices for roughly 1,500 individual properties.  Redbubble's proactive policing efforts have resulted in the disabling or removal of more than 3.7 million listings from the Marketplace, and Redbubble has disabled and/or terminated more than 670,000 Seller accounts for violation of its User Agreement and/or IP/Publicity Rights Policy.

Prior to the filing of this lawsuit, YZ had contacted Redbubble on a single occasion in February 2020 to complain of certain designs that YZ contended infringed its rights. That same day, Redbubble removed the identified listings, notified YZ of the removal, and provided YZ with a summary showing the seller's earnings from those listings (which were under $1,000). None of those listings ever reappeared on the Redbubble Marketplace.

Redbubble subsequently began proactively policing for YZ content, removing listings that it believed YZ would consider infringing. As a result, most of the listings that YZ identified in its Complaint had already been removed from the Marketplace, without any prompting by YZ, before suit was filed. Upon receiving notice of the suit, Redbubble promptly removed the remaining listings identified by YZ; there were no sales associated with *any* of those listings.

3. **Legal Issues**

    A. **Plaintiff's Summary of the Key Legal Issues**

Ultimate legal issues in light of the claims alleged in the Complaint include:

1) Whether Defendant has committed trademark infringement under 15 U.S.C. § 1114 of the Lanham Act;

2) Whether Defendant has committed trademark counterfeiting under 15 U.S.C. § 1114 of the Lanham Act;

3) Whether Defendant has committed trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a) of the Lanham Act;

4) Whether Defendant's actions have resulted in dilution of trademarks under 15 U.S.C. § 1125(c) of the Lanham Act;

5) Whether Defendant has committed copyright infringement under 17 U.S.C. §§ 501 et seq.

6) Whether Defendant's actions have resulted in violation of Cal. Bus. & Prof. Code §§17200 et seq.;

7) Whether Defendant's actions have resulted in violation of California Common Law Unfair Competition;

8) Whether Defendant's alleged infringement was willful;

9) The damages for Defendant's alleged violations;

Because this Action is in its preliminary stages, the Parties reserve the right to pursue other issues as discovery and investigation progresses.

### B. Defendant's Summary of the Key Legal Issues

In addition to the issues identified by YZ, Redbubble identifies at least the following additional issues, subject to supplementation when YZ files its amended complaint:

1) Whether YZ owns valid copyrights or trademarks;

2) Whether Redbubble can be deemed to engage in any volitional conduct that could serve as a basis for direct copyright infringement when it does not itself upload or copy designs for or make, sell or distribute the Accused Products, *see, e.g., VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th Cir. 2019); *The Ohio State University v. Redbubble, Inc.*, 369 F.Supp.3d 840 (S.D. Ohio 2019) ("*Ohio State*") (granting summary judgment of no direct trademark infringement because Redbubble does not upload, make, sell or otherwise "use" the allegedly infringed marks on products offered by third-party sellers through the Marketplace); *Y.Y.G.M. SA v. Redbubble Inc.*, No. 2:19-cv-04618-RGK-JPR, 2020 WL 3984528 (C.D. Cal. July 10, 2020) ("*Brandy Melville*") (granting summary judgment of no direct trademark infringement as in *Ohio State*, and of no vicarious trademark infringement because Redbubble does not have the type of relationship with product sellers or manufacturers nor the degree of control over products to sustain such a claim);

3) Whether Redbubble can be liable for contributory copyright or trademark infringement, given the affirmative steps that Redbubble takes to prevent it, when Redbubble lacked "actual knowledge of specific acts of infringement" by the Accused Products, and where YZ failed to notify Redbubble of alleged infringement. *see, e.g., Zillow, supra; Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 670-72 (9th Cir. 2017); *Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010);

4) Whether Redbubble can be held liable for vicarious copyright infringement with respect to YZ's purportedly copyrighted images when Redbubble lacks image-

recognition technology or other practical capabilities that would enable it to locate the allegedly infringing images, *see, e.g., Zillow, supra*, and where there is no evidence that the small amount of allegedly infringing content on the Redbubble Marketplace constitutes a draw for customers or a means by which Redbubble increases its user base, *see, e.g.*, *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004);

5) Whether Section 512(c) of the DMCA bars damages claims against Redbubble based on content uploaded by third-party Sellers, *see, e.g., Zillow, supra; Ventura Content Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018);

6) Whether Redbubble can be deemed to make a volitional "use" of YZ's trademarks where Redbubble does not make, sell or even view or take possession of the Accused Products, *see, e.g., Ohio State, supra*; *Brandy Melville, supra*;

7) Whether Redbubble can be held liable for vicarious trademark infringement where any alleged direct infringement was committed by independent third-party Sellers whose only relationship with Redbubble is as a service provider, *see, e.g., Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *Brandy Melville, supra*;

8) Whether Redbubble is similarly immune from YZ's unfair competition claims as for its direct trademark infringement claims, *see, e.g.*, *Ohio State, supra; Brandy Melville, supra*, or under 47 U.S.C. § 230(c)(1), *see, e.g., Perfect 10, Inc. v. Ccbill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007);

9) Whether at least some Accused Products are non-infringing because they are ornamental or fair uses, parodies, or otherwise protectable as free speech, *see, e.g., LTTB, LLC v. Redbubble Inc*., 385 F.Supp.3d 916 (N.D. Cal. 2019) (granting summary judgment for Redbubble based on the aesthetic functionality doctrine);

10) Whether, were Redbubble liable, YZ could recover damages in excess of the less than $3,000 in service fees that Redbubble received, *see* 17 U.S.C. § 504; 15 U.S.C. § 1117;

11) Whether Redbubble can be held liable for willful infringement or counterfeiting where Redbubble lacks knowledge of specific alleged infringements and third-party Sellers affirmatively represent that they have relevant rights, *see, e.g., Zillow, supra*;

12) Whether YZ can recover statutory damages or attorneys' fees as a matter of law on its copyright claims, given that the purportedly infringing conduct commenced before the asserted copyrights were registered, *see, e.g.*, 17 U.S.C. § 504; *Derek Andrew, Inc., v. Poof Apparel Corp.,* 528 F.3d 696, 700-701 (9th Cir. 2008); and

13) Whether Redbubble is entitled to attorneys' fees. 17 U.S.C. § 505; 15 U.S.C. § 1117.

4.  **Motions**

The parties met and conferred about Defendant's contemplated motion to dismiss Plaintiff's complaint. Although counsel for Plaintiff did not concede that the Complaint was deficient or required amendment, Plaintiff agreed to file an amended complaint that Defendant expects to resolve the relevant grounds for a motion to dismiss. Plaintiff expects to file its amended complaint no later than January 15, 2021. [Dkt. No. 23.]

The parties anticipate they will file dispositive or partially-dispositive motions, including for summary judgment or partial summary judgment, at the appropriate time.

5.  **Amendment of Pleadings**

Plaintiff is preparing to file an amended complaint. *See* Section 4, *supra*.

6.  **Evidence Preservation**

The parties have reviewed the ESI Guidelines and confirm that they have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evidence in this action.

7.  **Disclosures**

The parties have agreed to exchange initial disclosures on or before February 5, 2021.

8.  **Discovery**

The parties have not yet taken discovery. The parties have discussed the discovery they anticipate serving. Each side anticipates noticing depositions of Rule 30(b)(6) representatives and serving written discovery in the form of document demands and perhaps interrogatories or requests for admissions. The parties may notice additional depositions – *e.g.*, depositions of witnesses disclosed in initial disclosures – but require additional information before determining the scope of those additional depositions. The parties contemplate entering into a stipulated

protective order protecting certain confidential and commercially sensitive information that may be disclosed in discovery.  Counsel have, to date, worked collaboratively and professionally together, and they will endeavor to do so throughout the discovery process so as to avoid unnecessary motion practice.

9. **Class Actions**

This is not a class action.

10. **Related Cases**

"The court has reviewed the motion 95 in case 18-cv-03451-JST and determined that no cases are related and no reassignments shall occur." [Dkt. No. 13.]

11. **Relief**

Plaintiff seeks statutory damages, as well as damages for Defendant's infringement of the YZ Goods for lost profits it would have made but for Defendant's infringement. Plaintiff contends that Defendants' infringement has been willful and seeks enhanced damages. Plaintiff also seeks a preliminary and permanent injunction, enjoining Defendants from further infringement. Plaintiff intends to seek an award of attorneys' fees, costs, and other relief found to be appropriate by the Court in the event that it prevails in this action. Plaintiff believes damages to be in the range of $30 million.

Defendant seeks a declaration that it has not violated Plaintiff's rights, and an award of costs and reasonable attorneys' fees.

12. **Settlement and ADR**

The parties have agreed that their preferred form of ADR is a Settlement Conference before a Magistrate Judge.  Alternatively, in the event that the Court declines to order a Settlement Conference, the parties agree that their preferred alternative form of ADR is a Mediation before a member of the Court's panel.  The parties have engaged in informal settlement discussions, but remain far apart.

13. **Consent to Magistrate Judge for all Purposes**

All parties have not consented to have a Magistrate Judge conduct all further proceedings including trial and entry of judgment. [Dkt. Nos. 16, 17.]

14. **Other References**

The parties do not believe any other references are appropriate at this time.

15. **Narrowing of Issues**

The parties believe that the issues can be narrowed by dispositive motions when appropriate. Other than that, the parties are not currently aware of issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial, or request bifurcation. However, the parties reserve the right to seek bifurcation prior to trial if it appears at that time that bifurcation may simplify and/or expedite the presentation of evidence at trial.

16. **Expedited Trial Procedure**

The parties do not believe this case is appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

17. **Scheduling**

| Event | Joint Proposal |
| --- | --- |
| Deadline to Identify Experts on Issues on Which Party Bears Burden | 9/10/21 |
| Fact Discovery Cutoff | 10/8/21 |
| Expert Disclosure on Issues on Which Party Bears Burden | 11/12/21 |
| Rebuttal Expert Disclosure | 12/17/21 |
| Expert Discovery Cutoff | 1/21/22 |
| Last Day to File Dispositive Motions (oppositions due 4 weeks after filing, replies 2 weeks after oppositions) | 2/11/22 |
| Last Day to Hear Dispositive Motions | On or after 4/14/22 |
| Pretrial Conference | On or after 7/14/22 |
| Trial | On or after 8/15/22 |

18. **Trial**

Plaintiff has demanded a jury, and Defendant intends to do so in its answer. The parties expect a 5- to 7-day trial.

19. **Disclosure of Non-Party Interested Entities or Persons**

Plaintiff does not have interested persons or entities to report

Defendant intends to file its "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 with its response to Plaintiff's yet-to-be-filed amended complaint. Defendant intends to identify its corporate parent, Redbubble Limited, and insurance carriers, Chubb Australia, Chubb Limited, and ACE American Insurance Company.

20. **Professional Conduct**

Counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully submitted,

Dated: December 30, 2020.    AESTHETIC LEGAL, A.P.L.C.
MATTHEW SWANLUND

LEJEUNE LAW, P.C.
CODY R. LEJEUNE

By: /s/ Cody R. LeJeune
    Cody R. LeJeune
    Attorneys for Plaintiff
    YZ PRODUCTIONS, INC.

Dated: December 30, 2020.    COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR

By: /s/ Joshua M. Masur
    Joshua M. Masur
    Attorneys for Defendant
    REDBUBBLE INC.

ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)

I, Joshua M. Masur, am the ECF User whose identification and password are being used to file this stipulation. In compliance with Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: December 30, 2020.                    */s/ Joshua M. Masur*
                                              Joshua M. Masur